UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANASTASIA DOE,

    Plaintiff,                                                    CASE NO.:

vs.

DARREN K. INDYKE AND RICHARD D.
KAHN AS CO-EXECUTORS OF THE
ESTATE OF JEFFREY E. EPSTEIN

    Defendant.
_____/

## COMPLAINT

    Plaintiff, ANASTASIA DOE, by and through her undersigned counsel, for her claims against Defendant, Darren K. Indyke and Richard D. Kahn, as Co-Executors of the Estate of Jeffrey E. Epstein, states and alleges as follows:

    1.    The controversy in this cause of action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Therefore, jurisdiction is proper under 28 U.S.C. section 1332.

    2.    Plaintiff who was born in 1989 and files this Complaint under a pseudonym in order to protect her identity because this Complaint makes allegations of a sensitive sexual nature the disclosure of which, in association with her name, would cause further harm to her.

    3.    Plaintiff is currently a resident of and domiciled in the state of New York.

    4.    At all times material to this cause of action, Jeffrey Epstein travelled between and stayed regularly in multiple residences, including in New York, New York and the United States Virgin Islands. He was a citizen of the United States and a resident of the U.S. Virgin Islands.

5. At all times material to this cause of action Jeffrey Epstein was an adult male born in 1953, who died on August 10, 2019.

6. Defendant, Darren K. Indyke and Richard D. Kahn as Co-Executors of the Estate of Jeffrey E. Epstein ("Estate of Jeffrey E. Epstein") the Estate of Jeffrey E. Epstein was opened and domiciled in the United States Virgin Islands, St. Thomas Division, and is the legal entity responsible for intentional, criminal, or tortious conduct committed by Jeffrey Epstein as described in this Complaint.

7. A substantial part of the acts, events, and omissions giving rise to this cause of action occurred in the Southern District of New York; venue is proper in this District. 28 U.S.C. section 1391(b)(2).

8. At all times material to this cause of action, Jeffrey Epstein (legally represented now through Darren K. Indyke and Richard D. Kahn as Co-Executors of the Estate of Jeffrey E. Epstein (and referred to herein as "Estate of Jeffrey E. Epstein") owed a duty to Plaintiff to treat her in a non-negligent manner and not to commit, or conspire to commit, or cause to be committed intentional, criminal, fraudulent, or tortious acts against Plaintiff, including any acts that would cause Plaintiff to be harmed through conduct committed against her in violation of New York Penal Law section 214-G, New York Penal Law section 130.20; or New York Penal Law 130.25; or New York Penal Law 130.35; or New York Penal Law 130.40; or New York Penal Law 130.52; or New York Penal Law 130.66.

**FACTUAL ALLEGATIONS**

9. At all times material to this cause of action, Jeffrey Epstein was an adult male over 45 years old. Epstein was tremendously wealthy, widely recognized as a billionaire, who used his wealth, power, resources, and connections to commit illegal sexual crimes in violation of federal

and state statutes and to employ and conspire with other individuals and corporate entities to assist him in committing those crimes or torts or to facilitate or enable those acts to occur.

10. Epstein displayed his enormous wealth, power, and influence to his employees; to the employees of the corporate or company entities who worked at his direction; to the victims procured for sexual purposes; and to the public, in order to advance and carry out and conceal his crimes and torts.

11. The allegations herein primarily concern Jeffrey Epstein's conduct while at his townhouse in New York.

12. Epstein had a compulsive sexual preference for young females as young as 14 years old.

13. Epstein enjoyed sexual contact with young females, including minor children, and took pleasure corrupting vulnerable young females, including minor children, into engaging in sexual acts with him.

14. Epstein directed a complex system of individuals, including employees and associates of entities, to work in concert and at his direction, for the purpose of harming teenage girls through sexual exploitation.

15. On July 2, 2019, the United States Attorney's Office for the Southern District of New York filed a Sealed Two Count Indictment inclusive of One Count of Sex Trafficking Conspiracy and One Count of Sex Trafficking, in part due to Epstein's criminal activities against children in the New York Mansion located at 9 East 71st Street.

16. On July 8, 2019, Jeffrey Epstein was arrested pursuant to the aforementioned Indictment, which is attached hereto as **Exhibit A**.

17. The Indictment stated in part, and Plaintiff herein adopts as true, that "from at least in or about 2002, up to and including at least in or about 2005, Jeffrey Epstein, the defendant, enticed and recruited, and caused to be enticed and recruited, minor girls to visit his mansion in Manhattan, New York (the "New York Residence") and his estate in Palm Beach, Florida (the "Palm Beach Residence") to engage in sex acts with him, after which the victims were given hundreds of dollars in cash." Criminal Indictment at 1.

18. "Moreover, and in order to maintain and increase his supply of victims, Epstein also paid certain of his victims to recruit additional girls to be similarly abused by EPSTEIN. In this way, EPSTEIN created a vast network of underage victims for him to sexually exploit in locations including New York and Palm Beach." Criminal Indictment at 1-2.

19. "The victims described herein were as young as 14 years old at the time they were abused by Jeffrey Epstein, and were, for various reasons, often particularly vulnerable to exploitation. Epstein intentionally sought out minors and knew that many of his victims were in fact under the age of 18, including because, in some instances, minor victims expressly told him their age." Criminal Indictment at 2.

20. "In creating and maintaining this network of minor victims in multiple states to sexually abuse and exploit, JEFFREY EPSTEIN, … worked and conspired with others, including employees and associates who facilitated his conduct by, among other things, contacting victims and scheduling their sexual encounters with EPSTEIN at the New York Residence and at the Palm Beach Residence." Criminal Indictment at 2.

21. The indictment further explained, and Plaintiff adopts and alleges, that, "[v]ictims were initially recruited to provide 'massages' to Epstein, which would be performed nude or

partially nude, would become increasingly sexual in nature, and would typically include one or more sex acts." Criminal Indictment at 3.

22.     "Between at least in or about 2002 and in or about 2005, Epstein abused numerous minor victims at the New York Residence by causing these victims to be recruited to engage in paid sex acts with him." Criminal Indictment at 3.

23.     Jeffrey Epstein received near daily massages from young females, often minors, who were not experienced in massage. Rather than receive regular body massages, Epstein was predictably sexually abusing the young females in violation of New York Penal Law Section 130.

24.     Jeffrey Epstein, specifically targeted underprivileged, emotionally vulnerable and/or economically disadvantaged young females to sexually molest and abuse.

## ANASTASIA DOE

25.     Minor victim ANASTASIA DOE was subjected to the types of illegal sexual acts detailed in the Criminal Indictment filed against Jeffrey Epstein by the Southern District of New York and adopts herein the allegations above detailed in paragraphs 8-24.

26.     Jeffrey Epstein committed acts of sexual abuse against Plaintiff from 2003 through 2008, beginning when she was 14 years old.

27.     In or about 2003, Plaintiff was recruited by another minor child to go to Jeffrey Epstein's mansion in Manhattan, New York to provide him with a "massage."

28.     The minor child who recruited Plaintiff informed Plaintiff that she would be paid $300 to provide a massage to a rich man in Manhattan.

29.     Plaintiff was a minor female with no experience or training in massage.

30.     In 2003, Plaintiff's friend brought Plaintiff to Jeffrey Epstein's townhouse mansion located at 9 East 71st Street, NY to provide him with a massage.

31. Upon arrival to the mansion, the two minor children were escorted inside by an employee working at the mansion up to Jeffrey Epstein's massage room.

32. Plaintiff's friend entered the massage room with Plaintiff where they met Jeffrey Epstein.

33. Jeffrey Epstein lay down naked on the massage table and instructed Plaintiff and her friend to remove their clothes, and both complied.

34. Plaintiff's friend began instructing Plaintiff how to provide Jeffrey Epstein a massage and Plaintiff began doing as told.

35. During the massage, Jeffrey Epstein turned over and began touching Plaintiff's breasts, and vagina.

36. Jeffrey Epstein then began masturbating in front of Plaintiff while instructing Plaintiff to pinch his nipples.

37. Jeffrey Epstein took out a vibrator sex toy and used it forcefully on Plaintiff's vagina.

38. During this first encounter, Jeffrey Epstein penetrated Plaintiff's vagina with his finger and the sex toy.

39. Jeffrey Epstein continued to masturbate until ejaculation, after which he paid Plaintiff $300.

40. After the first encounter, Plaintiff was asked for her telephone number which was kept by Jeffrey Epstein or one of his employees who worked at his NY mansion.

41. Plaintiff was contacted regularly beginning in 2003 while she was 14 years old to schedule times for her to visit the mansion and engage in sexual acts with Jeffrey Epstein in his massage room.

42. Lesley Groff, one of Jeffrey Epstein's most trusted employees, would typically call Plaintiff to schedule a time for her to visit Jeffrey Epstein at the mansion. Other times, Plaintiff would be called by Jeffrey Epstein directly.

43. Beginning in 2003 through 2006, Plaintiff visited Jeffrey Epstein at his mansion on average once per week. During each visit, Jeffrey Epstein engaged in sexual contact with Plaintiff, which often included touching her naked breasts and vagina and using sex toys on her vagina.

44. On numerous occasions, Jeffrey Epstein would forcibly insert his finger or sex toy into Plaintiff's vagina.

45. On one occasion when Plaintiff was 15 years old, Jeffrey Epstein's girlfriend entered the massage room while Plaintiff was in there. Jeffrey Epstein ordered his girlfriend to engage in oral sex with Plaintiff during that occasion, which she did by force and against Plaintiff's will and consent.

46. On another occasion, when Plaintiff was 16 years old, Jeffrey Epstein engaged in forcible sexual intercourse with Plaintiff, and paid her $400 instead of the normal $300 after that forcible sexual encounter.

47. In addition to going to Jeffrey Epstein's mansion where Jeffrey Epstein violated the minor Plaintiff sexually, Jeffrey Epstein also encouraged Plaintiff to bring her high school friends to him for sexual purposes as well.

48. Jeffrey Epstein told Plaintiff he would pay her $300 for each friend she brought him.

49. Plaintiff did as she was instructed to do and brought Jeffrey Epstein other females as young as 14 years old. Plaintiff was paid $300 for each she brought.

50. While Plaintiff was a minor child, beginning when she was 14 years old until Plaintiff was 17 years old, Jeffrey Epstein repeatedly committed sexual acts against Plaintiff constituting sexual offenses as defined in New York Penal Law § 130. On numerous occasions during that period of time, Jeffrey Epstein sexually touched and penetrated Plaintiff's vagina with his fingers and sex toys, he masturbated in front of her, caused her to engage in sex acts with another female, and on one occasion had sexual intercourse with Plaintiff when she was only 16 years old. All sexual acts were performed by Jeffrey Epstein intentionally and for no legitimate purpose and for his own gratification when Plaintiff was a minor child less than seventeen years of age.

51. Pursuant to New York Penal Law § 130.05, a person is deemed incapable of consent when she is less than seventeen years old.

52. Jeffrey Epstein committed sexual misconduct against Plaintiff as defined in §130.20 of the New York Penal Law, inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff without Plaintiff's consent.

53. Jeffrey Epstein committed rape in the third degree as defined in §130.25 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff when Jeffrey Epstein was over 21 years old and Plaintiff was less than 17 years old.

54. Jeffrey Epstein committed rape in the first degree as defined in §130.35 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff by forcible compulsion;

55. Jeffrey Epstein caused a Criminal sexual act in the third degree to be committed as defined in §130.40 inasmuch as Jeffrey Epstein forced Plaintiff to be forcibly subjected to oral sexual contact by his girlfriend against Plaintiff's consent.

56. Jeffrey Epstein committed a forcible touching against Plaintiff as defined in §130.52 of the New York Penal Law, inasmuch as Jeffrey Epstein, intentionally and for no legitimate purpose, engaged the forcible sexual touching of Plaintiff for the purpose of degrading or abusing her or for the purpose of gratifying his sexual desire.

57. Jeffrey Epstein committed sexual abuse in the third degree against Plaintiff as defined in §130.55 of the New York Penal Law when he engaged in sexual contact with Plaintiff beginning when she was 14 years old and including through a time when she was 17 years old and when Jeffrey Epstein was greater than 5 years her elder.

58. Jeffrey Epstein committed an aggravated sexual abuse in the third degree against her as defined in §130.66 of the New York Penal Law, inasmuch as Jeffrey Epstein inserted a foreign object into the vagina of Plaintiff by forcible compulsion.

## COUNT I
## BATTERY/VIOLATION OF SECTION 130
## AGAINST THE ESTATE OF JEFFREY E. EPSTEIN

59. Plaintiff incorporates by reference paragraphs 1-58 and re-alleges them as if set forth fully herein.

60. The intentional acts of Jeffrey Epstein against Plaintiff constitute a sexual offense as defined in New York Penal Law § 130, including but not limited to the following:

    a. Sexual misconduct as defined in §130.20 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff without Plaintiff's consent;

    b. Rape in the third degree as defined in §130.25 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff when Jeffrey Epstein was over 21 years old and Plaintiff was less than 17 years old.

    c. Rape in the first degree as defined in §130.35 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff by forcible compulsion;

    d.  Criminal Sexual Act in the third degree as defined in §130.40 inasmuch as Jeffrey Epstein forced Plaintiff to receive oral sexual contact by Jeffrey Epstein's girlfriend without Plaintiff's consent;

    e.  Forcible touching as defined in §130.52 inasmuch as Jeffrey Epstein, intentionally and for no legitimate purpose, engaged the forcible sexual touching of Plaintiff for the purpose of degrading or abusing her or for the purpose of gratifying his own sexual desire; and

    f.  Sexual abuse in the third degree as defined in §130.66 inasmuch as Jeffrey Epstein inserted a foreign object in the vagina of Plaintiff by forcible compulsion.

    g.  Aggravated sexual abuse in the second degree as defined in §130.67 inasmuch as Jeffrey Epstein caused physical injury to Plaintiff when he inserted a finger into the vagina of Plaintiff by forcible compulsion.

61.  On numerous occasions as described in the complaint above, Epstein intentionally, forcibly, violently, or invasively used his fingers, and foreign objects to make unwanted, unlawful, harmful, and offensive physical contact with Plaintiff's body.

62.  This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

63.  This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). See N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

64.  As a direct and proximate result of Jeffrey Epstein's violations of New York Penal Law § 130, Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in

the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT TWO
## SEXUAL ASSAULT

65.     Plaintiff incorporates by reference paragraphs 1-58 and re-alleges them as if set forth fully herein.

66.     On numerous occasions over three years, Epstein made violent sexual demands on Plaintiff while placing his hands on her body in a position of dominance and control and while touching Plaintiff in violent and invasive ways.

67.     These demands, often made when Epstein and Plaintiff were alone, were intended to frighten Plaintiff into submitting to Epstein's sexual demands and placed Plaintiff in apprehension of harm.

68.     This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

69.     This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). See N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

70.     As a direct and proximate result of Jeffrey Epstein's violations of New York Penal Law § 130, Plaintiff has in the past suffered and in the future will continue to suffer physical injury,

pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses.  These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, and such other and further relief as this Court deems just and proper.  Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71. Plaintiff incorporates by reference paragraphs 1-58 and re-alleges them as if set forth fully herein.

72. Epstein's years long sexual abuse against a teenaged Plaintiff was extreme and outrageous conduct that shocks the conscience.

73. Epstein's serial sexual assaults, committed during the course of a methodical plan of recruitment, enticement, and attack, inflicted severe pain and anguish upon Plaintiff.

74. Epstein directed this conduct at Plaintiff and knew that it would cause severe and lasting emotional distress. Indeed, the conduct caused Plaintiff severe and lasting emotional distress and serious injuries to her mental health.

75. Epstein's direction of his girlfriend to engage in unwanted oral sexual contact with Plaintiff was done with knowledge that it would cause severe and lasting emotional distress.

76. Epstein's enticement and encouragement for Plaintiff to recruit other minor females for Jeffrey Epstein to sexually assault was done with knowledge it would cause severe and lasting emotional distress.

77. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). See N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

78. As a direct and proximate result of Jeffrey Epstein's violations of New York Penal Law § 130, Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT FOUR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff incorporates by reference paragraphs 1-58 and re-alleges them as if set forth fully herein.

80. Epstein invited Plaintiff, then a teenaged girl, into his home for years. Once under his supervision, Epstein proceeded methodically to sexually abuse Plaintiff.

81. Epstein's conduct was extreme and outrageous, breached a duty owed directly to plaintiff, endangered her physical safety, and caused severe and lasting emotional distress and serious injuries to Plaintiff's mental health.

82. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). See N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

83. As a direct and proximate result of Jeffrey Epstein's violations of New York Penal Law § 130, Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

Dated: December 27, 2019

          Respectfully Submitted,

          EDWARDS POTTINGER, LLC

          By: */s/ Bradley J. Edwards*
               Bradley J. Edwards
               NY Bar No.: 5749684
               Brittany N. Henderson
               425 N. Andrews Ave., Suite 2
               Fort Lauderdale, FL 33301
               (954)-524-2820
               Fax: (954)-524-2822
               Email: ecf@epllc.com
                      brad@epllc.com
                      brittany@epllc.com
               *(Seeking Admission Pro Hac Vice)*