# EDWARDS POTTINGER LLC

| Florida Office | 425 North Andrews Avenue<br>Suite 2<br>Fort Lauderdale, FL  33301 | New York Office |
|---|---|---|
| Bradley J. Edwards *◊ǂ<br>Seth M. Lehrman *†<br>Brittany N. Henderson *◊<br>Matthew D. Weissing *ǂ | Telephone (954)524-2820<br>Fax (954)524-2822 | J. Stanley Pottinger ‡<br><br>† Admitted in California<br>◊ Admitted in District of Columbia<br>* Admitted in Florida<br>‡ Admitted in New York<br>ǂ Board Certified Civil Trial Lawyer |

April 15, 2020

**Filed Via ECF**
Magistrate Judge Debra C. Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, New York, NY 10007

> Re:  *VE v. Nine East 71st Street et al.*, No. 19-cv-07625 (S.D.N.Y.) (Nathan, J.)
> *Katlyn Doe v. Darren K. Indyke et al.*, 19-cv-07771 (S.D.N.Y.) (Castel, J.)
> *Pricilla Doe v. Darren K. Indyke et al.*, No. 19-cv-07772 (S.D.N.Y.) (Carter, J.)
> *Lisa Doe v. Darren K. Indyke et al.*, No. 19-cv-07773 (S.D.N.Y.) (Ramos, J.)
> *Anastasia Doe v. Darren K. Indyke, et al.*, No. 19-cv-11869 (S.D.N.Y.) (Nathan, J.)

Dear Judge Freeman,

We represent the five Plaintiffs referenced above whose cases have all been assigned to Your Honor. We write to provide you with a Status Update regarding the progress of settlement discussions in the cases. As Your Honor is likely aware, counsel for claimants have spent a substantial amount of time working with both the Attorney General of the Virgin Islands and the Estate in an effort to facilitate the establishment of an independent and Voluntary Claims Resolution Program ("Program") for the purposes of resolving sexual abuse claims against Jeffrey Epstein. Unfortunately, we have reached a point of apparent impasse, and thus felt it necessary to apprise the Court of the recent events that have transpired.

As Your Honor is aware, on November 14, 2019, the Estate sought approval of the Program from the probate court in the United States Virgin Islands. On January 15, 2020, just before the February 4, 2020 hearing wherein approval of the Program was anticipated, the Attorney General of the Virgin Islands filed a forfeiture action against the Estate along with a Criminal Activity Lien pursuant to the Criminally Influenced and Corrupt Organizations Act ("CICO"), effectively preventing the Estate from utilizing Estate assets to administer the Program.

At the February 4, 2020 hearing in the Virgin Islands, Judge Hermon-Purcell informed everyone that the Attorney General's lien precluded the Court from allowing the Program to proceed and urged the Estate to meet with the Attorney General in an effort to resolve their disagreements to the extent necessary to allow the Program to move forward. The Attorney General expressed that she did not wish to impede the establishment of the Program, rather, she felt compelled to seek improvements to the Program to

ensure that its administration is both fair to the victims and independent from the Estate. In furtherance of that position, on February 10, the Attorney General wrote a letter to the Estate, outlining eleven substantive concerns about the manner in which the proposed Program was structured. Summarily, the Attorney General's main concerns centered on the following: (a) the independence of the Program Designers and Administrator, who were unilaterally selected by the Estate; (b) ensuring that assets would be preserved for victims who opted out of the program or came forward in the future to make sure that opting out of the Program was a meaningful option; and (c) the scope of the releases required of victims who participated in the program and their ability, and the ability of other witnesses, to cooperate with law enforcement. After careful consideration, including in-person meetings with several of Mr. Epstein's victims and counsel for many victims who flew back to the USVI, the Attorney General agreed to a partial lifting of her lien to allow for the immediate and effective implementation of the Program if the Estate would agree to certain improvements in the Program protocol.

While it is true that counsel for the victims agreed with the Program moving forward as it was prior to the Attorney General's intervention, there were certain components of the Program that facially appeared to favor the Estate to the prejudice of the victims. The most obvious example of this is that the Estate unilaterally chose the Program Designers and Program Administrator, refusing to allow the victims or counsel any input in that selection process despite many requests for same. This issue was raised as a problem in front of Your Honor at the joint hearing on February 11, 2020. Your Honor even suggested at that hearing that if the appearance of the Program was going to be one of fairness, then the victims and their counsel should have some input in the selection process of the Administrator. The Estate did not listen, which only heightened the concerns of the Attorney General.

We agree with the Attorney General that a Program of this nature requires excellent administration. For that reason, after meeting with and working with her for many months, the undersigned counsel gained confidence in the Estate selected Administrator, Jordana Feldman, and believes she is best suited to serve in the role of Program Administrator. The Attorney General, however, has taken great issue with the independence of the Program based on the fact that Ms. Feldman and the Program Designers—Ken Feinberg and Camille Biros—were unilaterally selected by the Estate without input from the victims. After much deliberation, and at the urging of the undersigned, the Attorney General agreed that her impartiality concerns could be meaningfully satisfied so long as the Estate would agree to add a victim-selected Administrator to serve alongside Ms. Feldman.

We recommended Professor Marci Hamilton, as she is the foremost expert on child sexual abuse in the country. Professor Hamilton has a wealth of knowledge and experience in the area of sexual abuse and would be an indispensable asset to the Program. Professor Hamilton has an unparalleled understanding of the dynamics of sexual abuse, common responses to sexual abuse, and the impact of sexual abuse on victims. Because of Ms. Hamilton's unimpeachable record as an expert on the topic, the suggestion of adding her to the Program was ultimately accepted by the Attorney General and also by the Estate, the Program Designers, and the Program Administrator.

This agreement was promising, although Ms. Hamilton's precise role had not been defined. In an effort to ensure that Professor Hamilton's expertise is utilized to the fullest extent possible, the Attorney General wanted Professor Hamilton to have equal decision-making authority and for each claim to be decided by a consensus agreement between Ms. Feldman and Professor Hamilton. The Estate rejected that notion outright claiming that any disagreement would delay what was designed to be an efficient

process. Instead, the Estate proposed that Ms. Hamilton would be available to consult with Ms. Feldman on an as-needed basis.

On March 5, 2020, counsel for the Estate, counsel for the Attorney General, the undersigned counsel, and the Program Administrator met in Miami, Florida in an effort to resolve all outstanding issues to allow the Program to move forward, including to reach an agreement for Marci Hamilton's role in the Program. After the meeting, the undersigned believed all parties had agreed that Professor Hamilton would be a Program Consultant with the ability to make a meaningful impact on the Program, but that all final claim decisions would rest exclusively with Ms. Feldman. Again, counsel for the victims found this agreement to be hopeful—albeit far from the Attorney General's original demand—as Professor Hamilton would be able to provide input and valuable information on sexual abuse that would assist in the evaluation of the claims.

After the Miami meeting, varying role descriptions remained pending for Professor Hamilton. The Attorney General and the victims merely requested that in order to serve as a meaningful Consultant to the Program, Professor Hamilton should be permitted to review the claimant's files and provide information to Ms. Feldman before evaluation decisions were made, understanding that Ms. Feldman could choose to completely ignore any opinions or suggestions Ms. Hamilton made and that the ultimate decision will rest exclusively with Ms. Feldman. The Estate rejected outright the idea of allowing Professor Hamilton to have access to the claimant files, and instead maintained that Professor Hamilton would only be utilized to answer any general questions that may arise, if someone ever decided to call her with a question. With confidence that Professor Hamilton's involvement would enhance the quality of the Program and serve as an additional protection for the victims, the Attorney General reluctantly agreed to allow the Program to proceed notwithstanding the Estate's refusal to allow Professor Hamilton to have decision making authority or even access to the view claimants Program files, so long as the Program mandated periodic meetings between Ms. Feldman and Professor Hamilton. The Estate and Attorney General agreed to bi-monthly meetings between the two, resolving the issue.

In addition to the inclusion of Professor Hamilton as a Program Consultant and referral source for counseling or other services to victims, all parties have agreed to make additional enhancements to the Program including: 1) the probate court in the Virgin Islands will be responsible for approving and overseeing the expenses in operating the Program, 2) information provided by victims during the administration of the Program will be maintained as confidential and not be shared with the Estate or used against victims in defending claims, 3) the Program will report to the probate court on an aggregate basis the number and amount of claims awarded, and 4) a Victim Set-Aside Fund will be established with guaranteed minimum funding of $25 million as a floor for victims who opt out of the Program or who emerge within eighteen months of the Program's launch.

After what has turned into many months of time and effort expended to reach an agreement wherein the Attorney General would allow the Program to move forward, all parties—the Estate, the Attorney General, and counsel for many of the victims—did in fact agree on all aspects of the Program with the exception of the language of the proposed release to be signed by claimants. Both the Attorney General and the victims have asked that the release not include individual sex abusers aside from Jeffrey Epstein. Unfortunately, the Estate has remained steadfast in its position to require claimants resolving claims through the Program to release all abusers related to Epstein, making it clear that the release is designed in part to protect any criminal associated with the Epstein enterprise. While the victims do not

believe this makes the statement the Estate should want to make, the Estate has claimed to do so in an effort to uphold their fiduciary duties. We recognize that the Program is whatever the Estate wants it to be and that if any victim does not want to release other criminals associated with Mr. Epstein then she can reject any offer made to her on that point.

In an effort to begin obtaining justice and compensation for our clients as soon as possible, counsel for the victims have agreed to move forward with the Program using the release as drafted with the intention of negotiating the finer points of the release if and when such negotiation becomes necessary during the Program process. Such agreement to relent only came after multiple efforts for compromise were offered by both the Attorney General and the victims—all of which were rejected by the Estate. Despite our urging, the Attorney General has expressed that she cannot allow a Program to go forward that on its face aims to protect other criminals who abused young women unless the probate court in the Virgin Islands rules that the Program should move forward with the current release over her objection.

As we have expressed to the Attorney General, the reality is that the Estate had no obligation to create a Program at all. The nature of many of these programs is that it is done for the benefit of the entity establishing the program—in this case the Estate. The Estate has not hidden behind that fact. The Estate had no obligation to consider the victims in choosing the Program Designers and Administrator. That decision to make a unilateral selection caused problems and made everyone skeptical from the very beginning. However, this is the Estate's Program and the Estate's rules. Recognizing that, we have assured the Attorney General that the victims are going into the Program eyes-wide-open, knowing that it is a Program designed by the Estate to protect the Estate and others. However, we have confidence and trust in the Program Administrator and her independence from the Estate and the fact that the claimants will have lawyers to advise them about the pros and cons of any settlement, including what she may be giving up. In that sense, the Program as designed, despite a less than optimal proposed release, is better than no program at all.

This court has always been keenly interested in the Program that the Estate has touted so strongly at every hearing. We felt that it was necessary to provide this Court with a brief, yet detailed, overview of the current status of the Attorney General's lien and the negotiations as they relate to the Program. In an effort to finally obtain justice for many of Jeffrey Epstein's victims, we again request that this Court urge the Estate and the Attorney General alike to finalize their agreement so that the Attorney General will lift her lien and allow for the Program to go forward.

EDWARDS POTTINGER

_____
Bradley Edwards


_____
Brittany Henderson